IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HISCOX DEDICATED CORPORATE MEMBER LTD., | § § | |
| Plaintiff, | § § | |
| vs. | § § § | CIVIL ACTION NO. __3:17-cv-3033__ |
| NEXT HEALTH, LLC., UNITED TOXICOLOGY LLC, MEDICUS LABORATORIES LLC, US TOXICOLOGY LLC, AND AMERICAN LABORATORIES GROUP LLC | § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Hiscox Dedicated Corporate Member Ltd. ("Hiscox"), Plaintiff in the above-styled and numbered cause, and respectfully shows the Court as follows:

**I.
PARTIES**

1.     Hiscox is a foreign entity organized under the laws of England and Wales with its principal place of business at One Great St. Helen's, London, EC2A 6HX, United Kingdom. Hiscox is an underwriter of the insurance policy at issue (described below). Hiscox is a citizen of the United Kingdom.

2     Defendant Next Health, L.L.C. ("Next Health"), is a limited liability company organized and existing under the laws of the state of Texas, with its principal place of business in Texas and located at 5710 LBJ Freeway, Suite 300, Dallas, Texas, 75240. Based upon information and belief, all members of Next Health are Texas citizens. Next Health may be

served by serving its registered agent, Registered Agents, Inc., 700 Lavaca St., Ste. 1401, Austin, Texas 78701.

3. Defendant Medicus Laboratories L.L.C. ("Medicus") is a limited liability company organized under the laws of Texas, with its principal place of business in Texas and located at 5710 LBJ Freeway, Suite 300, Dallas, Texas, 75240. Based upon information and belief, all members of Medicus are Texas citizens. Medicus may be served by serving its registered agent, Registered Agents, Inc., 700 Lavaca St., Ste. 1401, Austin, Texas 78701.

4      Defendant US Toxicology LLC ("US Toxicology") is a limited liability company organized under the laws of Texas, with its principal place of business in Texas and located at 5710 LBJ Freeway, Suite 300, Dallas, Texas, 75240. Based upon information and belief, all members of US Toxicology are Texas citizens. US Toxicology may be served by serving its registered agent, Registered Agents, Inc., 700 Lavaca St., Ste. 1401, Austin, Texas 78701

5. Defendant American Laboratories Group LLC ("ALG") is a limited liability company organized under the laws of Texas, with its principal place of business in Texas and located at 5710 LBJ Freeway, Suite 300, Dallas, Texas, 75240. Based upon information and belief, all members of ALG are Texas citizens. ALG may be served by serving its registered agent, Registered Agents, Inc., 700 Lavaca St., Ste. 300, Austin, Texas 78701.

6. Defendant United Toxicology LLC ("UTox") is a limited liability company organized under the laws of Texas, with its principal place of business in Texas and located at 5710 LBJ Freeway, Suite 300, Dallas, Texas, 75240. Based upon information and belief, all members of UTox are Texas citizens. UTox may be served by serving its registered agent, Registered Agents, Inc., 700 Lavaca St., Ste. 1401, Austin, Texas 78701.

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF                                     Page 2
D/974892v1

## II.
## JURISDICTION AND VENUE

7. The jurisdiction of this Court exists under 28 U.S.C. §1332 of the Federal Rules of Civil Procedure based upon the diversity of citizenship of Plaintiff and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events and omissions giving rise to the claims occurred and in which the underlying state court lawsuit that is the basis of this suit is pending.

## III.
## THE UNDERLYING LAWSUIT

9. Defendants are also defendants in a case filed on January 26, 2017, in the United States District Court for the Northern District of Texas, styled *United Healthcare Insurance Company, et al. v. Next Health, LLC, et al.*; Cause No. 3:17-cv-0243 ("the Underlying Lawsuit").

10. In the Underlying Lawsuit, the plaintiff alleges that Defendants succeeded in illegally billing commercial insurers for improper and unnecessary laboratory services. Between 2011 and mid-2016, Next Health and its subsidiaries allegedly submitted thousands of claims to United Healthcare Insurance Company ("UHC"), charging more than $400 million for out-of-network drug and pharmaco-genetic laboratory testing services. UHC allegedly paid Next Health and its subsidiaries more than $100 million for these claims.

11. The alleged improper and illegal billing schemes involved Next Health ordering and submitting improper and unnecessary laboratory tests and services and engaging in bribes and kickbacks to referral sources as part of the scheme. One of the alleged arrangements was the ADAR kickback scheme, which allegedly resulted in UHC paying Next Health subsidiaries more than $11.1 million in less than one year. After UHC began denying claims submitted by Next Health subsidiaries that were linked to this scheme, Next Health allegedly shifted and feverishly

submitted claims, which were based on the same malfeasance, under the guise of a different subsidiary.

12. In the Underlying Lawsuit, UHC seeks to recover damages in the amount of the payments it made to Next Health in reliance on the allegedly fraudulent claims submitted to it by Next Health's subsidiaries, the money it has expended in investigating and pursuing Next Health's scheme, damages to remedy the harm UHC suffered because of Next Health subsidiary United Toxicology's false association with UHC, and punitive damages to deter this conduct in the future. UHC further seeks injunctive and declaratory relief to preclude the submission of any similarly fraudulent claims, and to declare that UHC is not obligated to pay Next Health or any of its subsidiaries millions of dollars in charges stemming from claims submitted to UHC, which UHC has refused to pay because of its discovery of this scheme.

## IV.
## UNDERLYING LAWSUIT SUBMITTED FOR COVERAGE

13. Hiscox responded to the initial demand for coverage from Next Health and its subsidiary labs – Medicus Laboratories, LLC, US Toxicology LLC, UHC Toxicology, and American Laboratories Group LLC (collectively "Defendants") by way of a letter dated April 4, 2017. Thereafter, Hiscox became aware of new information that contradicted its prior understanding of the Underlying Lawsuit. Specifically, Hiscox received additional information that Defendants had knowledge of UHC's questioning of and investigation into the kickback schemes described in UHC's lawsuit before Next Health submitted its insurance application to Hiscox. UHC had been withholding tens of millions of dollars and Next Health had already returned some monies to UHC for billings related to one of the kickback schemes.

14. Hiscox requested by way of an email dated July 10, 2017, that Next Health provide it with additional information about what Defendants knew about UHC's investigation,

the kickback scheme, pre-suit communications with UHC and other related matters. Additionally, Hiscox issued a letter dated July 26, 2017, requesting such information and informing Next Health that Hiscox may have the right to rescind the Policy on the basis of misrepresentations made by Next Health in the coverage application.

15. Next Health responded to Hiscox's requests by way of a letter dated September 11, 2017, including with its response certain email correspondence between Next Health's counsel and UHC's counsel. That correspondence demonstrated that, prior to November 4, 2016, when Next Health signed its coverage application, UHC was seeking a return of monies it had paid to Next Health and its subsidiaries. This information was not provided on the insurance application. Indeed, there was no mention whatsoever of UHC's claims against Next Health in the application response.

16. Upon discovery of this information, Hiscox issued a letter dated October 25, 2017 providing notice of its intent to rescind the Policy.

## V.
## THE POLICY

17. Certain Underwriters at Lloyds of London (including Hiscox) issued Policy No. B0595RE00054915 to Next Health, LLC for the policy period of November 18, 2016, to November 18, 2017 ("the Policy"). The Policy provides coverage for Regulatory Billing Errors and Omissions. The limit of liability is $1 million per claim and in the aggregate. The coverage is subject to a $50,000 each claim retention.

18. The Policy insuring agreement provides in relevant part:

**We** will reimburse **you** or any **subsidiary** for all sums, in excess of the **retention** and within the applicable Limits of Liability, that the **Named Insured** becomes legally obligated to pay as regulatory fines and penalties (to the extent insurable by law), **damages, claims expenses** and **shadow audit expenses** (where applicable) resulting from a **regulatory proceeding** first instituted against **you**

and any **subsidiary** during the **policy period** or any **extended reporting period** (if applicable) and reported to **us** in writing in accordance with this Policy; provided that the wrongful act, error or omission giving rise to the **regulatory proceeding** occurs or allegedly occurs on or after the applicable **retroactive date**. We have no duty to defend under this Policy.

19. The Policy provides the following relevant definitions:

**Billing Errors Proceeding** means:

. . .

(b)  a formal investigation undertaken or written demand by a **Government Entity** or **commercial payer** alleging the presentation of, causing or allowing to be presented, or being liable for the presentation of any erroneous billings by **you** or any **subsidiary** to a government health benefit payer or **commercial payer** from which **you** or any **subsidiary** seeks and/or has received payment or reimbursement for medical services or items provided or prescribed by **you** or any **subsidiary**.  A **billing errors proceeding** does not include: (1) a routine audit conducted by a **Government Entity** or a **commercial payer**, or (2) a **criminal proceeding**.

. . .

**Claim** means a regulatory proceeding instituted against an insured.

. . .

**Commercial payer** means any private health insurance company.

. . .

**Regulatory Proceeding** means, and is limited to, any of the following instituted against you or any **subsidiary** during the **policy period**:

(a)  **Billing Errors Proceeding**, including **False Claim Act Violations**;

(b)  **ENTALA Proceeding**;

(c)  **Stark Proceeding**; or

(d)  **HIPAA Proceeding**.

A **Regulatory Proceeding** shall be deemed to be instituted when you or any subsidiary receives formal written notice of any of the foregoing.

. . .

**Subsidiary** means any legal entity in which **you** own, directly or indirectly, more than fifty percent (50%) of the issued or outstanding voting securities, provided that such entity:

a) was owned prior to the inception date of this Policy and was insured under a policy issued by Underwriters of which this Policy is a renewal; or

b) was so owned on the inception date of this Policy; or

c) was created or acquired after the inception date of this Policy, as described in Section 19, Changes In Exposure, of this Policy.

20. The Policy contains the following policy exclusion:

With respect to coverage, we will not be liable for any claim for:

. . .

2. Any **claim** or circumstance arising from any acts, errors or omissions which took place in whole or in part prior to the inception date of this policy and which any **Insured** knew or could have reasonably foreseen such acts, errors or omissions, could be the basis of a **claim** or circumstance under this Policy.

21. The Policy contains the following provision in Paragraph 23:

**23.    Warranty by the Named Insured**

By acceptance of this Policy, all Insureds agree that the statements contained in the application, any application for insurance if this Policy is a renewal, and any supplemental materials submitted therewith are their agreements and representations, which shall be deemed material to the risk assumed by us, and that this Policy is issued in reliance upon the truth thereof.

The misrepresentation or non-disclosure of any matter by you or your agent in the application, any application for insurance if this Policy is a renewal, or any supplemental materials submitted to the Underwriters, will render the Policy null and void and relieve us from all liability under the Policy.

The application and any application for insurance if this Policy is a renewal, and any supplemental materials submitted to us are deemed incorporated into and made a part of this Policy.

## VI.
## JUSTICIABLE INTEREST

22. Defendants made a demand for coverage under the Policy for the Underlying Lawsuit. However, Hiscox denies that the Policy provides coverage to Defendants under the Policy.

23. Hiscox seeks a declaration as to its duties and obligations, if any, to the Defendants for the Underlying Lawsuit under the Policy.

24. An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 *et se.* and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## VII.
## COUNTS

A. **Count I - Declaratory Relief – The Policy does not provide coverage because the insuring agreement is not triggered.**

25. Hiscox alleges and incorporates by reference the allegations found in paragraphs 1 to 24 above.

26. The Policy's insuring agreement requires that a regulatory proceeding be first instituted against an insured during the policy period or any extended reporting period (if applicable).

27. The policy period is November 18, 2016 to November 18, 2017.

28. Under the Policy, a "regulatory proceeding" includes a "billing errors proceeding."

29. According to the Policy, a "billing errors proceeding" includes a formal investigation undertaken or written demand by a private health insurance company alleging the

presentation of, causing or allowing to be presented, or being liable for the presentation of any erroneous billings by Next Health or any Next Health subsidiary to a private health insurance company from which Next Health or any Next Health subsidiary seeks and/or has received payment or reimbursement for medical services or items provided or prescribed by Next Health or any Next Health subsidiary.

30. UHC is a private health insurance company.

31. The Underlying Lawsuit arises out of a billing errors proceeding that was first instituted against Next Health before the Policy's November 18, 2016 inception date..

32. Because UHC's billing errors proceeding was first instituted against Next Health and/or Next Health's subsidiaries prior to the Policy's inception date, Hiscox is entitled to a declaration that the Policy does not provide coverage to the Defendants for the Underlying Lawsuit.

**B.     Count II - Declaratory Relief – The Policy does not provide coverage because of the applicability of exclusion 2.**

33. Hiscox alleges and incorporates by reference the allegations found in paragraphs 1 to 32 above.

34. The Policy precludes insurance coverage for "[a]ny claim or circumstance arising from any acts, errors or omissions which took place in whole or in part prior to the inception date of this policy and which any insured knew or could have reasonably foreseen such acts, errors or omissions, could be the basis of a claim or circumstance under this Policy."

35. Prior to the Policy's inception date, UHC sought a return from Next Health for substantial monies UHC had paid to Next Health relating to the alleged improper and illegal billing and kickback schemes described in the Underlying Lawsuit. UHC began withholding payment for some of these kickback scheme claims submitted by Next Health in late March

2016. By the end of October 2016, the total value of those withholdings was approximately $34 million. Furthermore, in early November 2016, UHC demanded payment from Next Health for over $11 million in connection with the ADAR kickback scheme.

36. Accordingly, UHC's claim arises from acts that took place in whole or in part prior to the inception date of this policy. Further, Next Health knew and/or could have reasonably foreseen such acts could be the basis of a claim or circumstance under the Policy.

37. Because of the applicability of Exclusion 2, Hiscox is entitled to a declaration that the Policy does not provide coverage to the Defendants for the Underlying Lawsuit.

C. **Count III - Declaratory Relief – The Policy does not provide coverage because of Paragraph 23.**

38. Hiscox alleges and incorporates by reference the allegations found in paragraphs 1 to 37 above.

39. Paragraph of the Policy states in pertinent part, "The misrepresentation or non-disclosure of any matter by you or your agent in the application, any application for insurance if this Policy is a renewal, or any supplemental materials submitted to the [Hiscox], will render the Policy null and void and relieve us from all liability under the Policy."

40. Next Health made misrepresentations and material non-disclosures in the insurance application dated November 4, 2016, when it failed to advise Hiscox of "any act, error, omission, fact, circumstance, or records request from any attorney which may give rise to a claim or suit."

41. Prior to November 4, 2016, Next Health was aware that Next Health's acts led UHC to investigate and seek a return of substantial sums of monies paid by UHC. Next Health did not advise Hiscox of these acts in its application for insurance. Next Health's acts ultimately resulted in the filing of the Underlying Lawsuit against Next Health.

42. Because of the applicability of Paragraph 23, Hiscox is entitled to a declaration that the Policy does not provide coverage to the Defendants for the Underlying Lawsuit.

**D.    Count IV – Claim of Rescission – Hiscox is entitled to rescind the Policy because of material misrepresentations in the coverage application**

43. Hiscox alleges and incorporates by reference the allegations found in paragraphs 1 to 42 above.

44. On November 4, 2016, Next Health made the following representations to Hiscox in the insurance application:

Are you presently aware of any facts or circumstances that may become a claim under this proposed policy of insurance?

[ ] Yes    [X] No    If Yes, please provide specific details on any yes answers on a separate page.

Are you or any organization proposed for this insurance aware of any act, error, omission, fact, circumstance, or records request from any attorney which may give rise to a claim or suit?

[ ] Yes    [X] No    If Yes, please attach details.

Have you, any person in your staff, or any other person or entity for whom coverage is applied ever been audited, investigated, or accused of billing errors or omissions by any governmental entity or private payer of healthcare services?

[X] Yes    [ ] No    If Yes, please attach details.

The explanation provided by Next Health did not mention anything about the billing errors and omissions that United Healthcare was raising and that are the subject of the Underlying Lawsuit.

Have you, any person in your staff, or any other person or entity for whom coverage is applied, ever made a refund to any governmental or private payer of health care services?

[X] Yes    [ ] No.

> The explanation provided by Next Health did not mention anything about the billing errors and omissions that United Healthcare was raising in the Underlying Lawsuit in response to this question either.

45. Percy Gomez, the Corporate Controller for Next Health, signed the application, which further states:

> The undersigned warrants and represents that all answers provided are true and accurate to the best of their knowledge.
>
> The undersigned agrees that any misrepresentations contained within this application and supporting documentation may be the basis for coverage being void in its entirety.

The application also specifically provides that if a material change occurs after the application is completed but before the inception of coverage, Next Health must notify the insurer. Next Health did not make Hiscox aware of any changes to its answers prior to the issuance of the Policy.

46. Next Health's representations in the application were false because Next Health was aware of an act, error, omission, fact, circumstance, or records request from any attorney which may give rise to a claim or suit. Specifically, Next Health was aware that Next Health's acts led UHC investigate and demand a return of substantial sums of monies paid by UHC prior to the date of the application.

47. Additionally, the information provided by Next Health as part of its explanation to the questions for which it provided a "Yes" answer on the application was at the very least misleading, if not fraudulent. In response to the question about whether it had ever been audited, investigated or accused of billing errors or omissions by a governmental or private payer, Next Health mentioned a $5 million settlement with the Office of Inspector General ("OIG") that it referenced under the heading of "Accounting." Hiscox has learned that this settlement actually related to a whistleblower/qui tam lawsuit filed on February 12, 2013 against Next Health's

predecessor and certain of its subsidiaries, including Medicus.  The qui tam lawsuit also named as defendants Andrew Hillman and Semyon Narosov, two Next Health executives who are the subject of an indictment filed on November 16, 2016 for their role in the alleged kickback schemes that are the subject of the Underlying Lawsuit, among other things.  The 2013 qui tam lawsuit asserted violations of the FCA, Stark Law and Anti-Kickback Statute.  Following the settlement of the 2013 qui tam lawsuit, Next Health was created to replace U.S. Health Group as the parent company of the subsidiary labs.  Next Health's response to the application makes no mention of the qui tam lawsuit or the allegations of billing fraud contained in that lawsuit.

48. Hiscox relied upon Next Health's representations by issuing the Policy to Next Health.

49. Next Health intended to deceive Hiscox by making the misrepresentations in the application to Hiscox.  By omitting any reference to UHC's investigation and request for a return of substantial sums of monies, Next Health intended to deceive Hiscox so that Next Health and the other defendants could obtain insurance coverage for UHC's demands, claims, and/or lawsuit against Defendants.

50. Next Health's representation was material to Hiscox because Hiscox would not have provided insurance coverage to Defendants for the claim and/or lawsuit asserted by UHC against Defendants had Hiscox known about the matters detailed above.

51. Upon discovering these misrepresentations, Hiscox provided notice of its intent to rescind the Policy and Hiscox is prepared to return the premiums paid on the Policy.

52. Hiscox is entitled to rescind the Policy based upon Next Health's material misrepresentations to Hiscox contained within the application.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff **HISCOX** prays for judgment as follows:

1. That the Court adjudicates and declares that the Policy provides no coverage to Defendants for the Underlying Lawsuit;

2. That Hiscox have judgment against Defendants for Hiscox's costs of court and expenses in this lawsuit; and

3. That Hiscox be awarded such other and further relief, legal or equitable, general or specific, to which they may show themselves to be justly entitled.

Respectfully submitted,

By: */s/ R. Brent Cooper*
R. Brent Cooper
Texas Bar No. 04783250
Brent.Cooper@cooperscully.com
R. Douglas Rees
Texas Bar No. 16700600
Doug.Rees@cooperscully.com
Robert J. Witmeyer
Texas Bar No. 24091174
Rob.Witmeyer@cooperscully.com

**COOPER & SCULLY, P.C.**
Founders Square
900 Jackson Street, Suite 100
Dallas TX 75202
214-712-9501 Direct Dial
214-712-9500 Office
214-712-9540 Fax

**ATTORNEYS FOR PLAINTIFF, HISCOX**